This morning, the people v. Jackson. The state's attorney is first today. May it please the court, counsel, my name is Sharon Shanahan, and I represent the people of the state of Illinois. Illinois State Police Trooper Graham gave the defendant a ticket for driving while suspended. He told Trooper Stram about it. A couple of weeks later, Trooper Stram saw the defendant driving. He suspected that she was still suspended, so he stopped her. Sure enough, she was still suspended. She also had amphetamines in the car, which is the basis for the instant charge. In the motion to suppress, the question was how long Stram could rely on Trooper Graham's information. Stram said a couple of weeks. The trial court agreed that that time frame was reasonable. But because it had been three weeks since the defendant's license was suspended, the trial court found the stop improper and granted the defendant the right to suppress. I think the most important thing that we have to talk about first is, is this reasonable suspicion or probable cause? There's no time frame within which a stop must be done, right? I mean, two weeks, two months? It has to be a reasonable time. Okay, but there's nothing statutory that sets that time. Exactly. And yet the trial court's decision in this case basically draws a line in the sand and says two weeks. If it's more than two weeks, it's unreasonable. It sounds like the court took the officer's opinion at its word and then that became what it made its ruling on. I would agree with that completely. And there's two points I'd like to – well, there's several points I'd like to make on that. But, again, I wanted to emphasize that we are dealing not with probable cause but reasonable suspicion, a much lower standard. So the trial court says police officer said two weeks, so two weeks it is. Well, first of all, we don't know that the two weeks – I mean, the trial court seemed to say, okay, two weeks from the time Trooper Graham suspended her license, and it's been three weeks. That's not what the police officer, what Trooper Stram said. Trooper Stram said it was – that he thought two weeks from the time he received the information was reasonable. And that's certainly a reasonable assumption that he could make. We don't know that Trooper Graham told him the day that it would – that he suspended the defendant's driver's license that – oh, a more likely thing is something along the lines of, oh, yeah, Jackson. I remember her. I suspended her a little while ago. And that's probably more like the conversation that occurred, I'm speculating there. But in any case, a police officer is not required to confirm specific facts in order to have reasonable suspicion. He doesn't have to confirm the date that the defendant was suspended. He does not have to confirm the date that his colleague told him that. He had – his recollection was that it was a couple of weeks. The other Trooper thought that was a month? No. Two months? No, no. Three months? It had been three weeks. Right. And Trooper Graham gave the suspended ticket three weeks, and Trooper Stram thought it was two weeks. That's reasonable then? Two to three weeks is reasonable right now? I would say so, yes. What about two months? That's reasonable there? Well, certainly we get – let's take the – certainly there does come a time when it becomes unreasonable. But to draw a line in the sand and say because Trooper Stram said two weeks, then two weeks is the rule, that's – first of all, that's not reasonable. And second of all, it's taking Trooper Stram's specific conclusion and making it apply. And that's the wrong standard. This should be an objective standard of what would a reasonable police officer consider to be a reasonable time to rely on information that someone's driver's license was suspended. And when you apply that standard, the proper standard, not the rule. So the trial judge says two weeks is okay? Yes. But what about 15 days? Well, there – you get into these very specific things. Fifteen days? Sixteen days? He said two weeks is okay, three weeks is too long is essentially what the trial court said. He was saying the police officer – he accepted the police officer's statement that two weeks was okay. And he said, but it was actually three weeks since the ticket was given. Therefore, since you said two weeks, but it was three weeks, you lose. And that's, number one, it's not using the proper standard. It's not using the reasonable police officer standard. It's using the specific police officer. Number two, Trooper Stram did within his belief, which he's not required. That's the whole purpose of a Terry stop, is that you can stop someone to confirm facts. He's not required to remember, oh, yes, it was on February the 22nd that Trooper Graham told me that on February the 18th. He's not required to remember facts like that, and he's not required to confirm facts like that. That is the purpose of a Terry stop, and this was a Terry stop. It was reasonable suspicion. I'm still trying to unravel some of the facts. The trooper that told him about the suspension, and he said he had stopped her two weeks earlier, had he stopped her because he knew that she was suspended already? He stopped her to give her a DUI. That was two weeks before, and apparently her license was suspended at that time. Suspended for failure to appear, I believe. Right, but what I'm saying is when he stopped her for the DUI, he found out at that time her license was suspended, correct? You're talking about Trooper Graham? Yeah, not, wait. Trooper Graham was the source of information. Yes, I'm talking about the source. You're saying did he give her a ticket for driving suspended? He found out. Why did he stop her on a failure to appear? I don't think he did. Okay, he stopped her on a DUI, and he found out that she was suspended on a failure to appear. Right. I believe that's correct. Okay. I mean, I'm going to, it also could be, and I'm sure counsel will correct me if I'm wrong here. Suspension for DUI has to happen after 30 days. 45 days. Yeah, so that wasn't it there. No, it wasn't that. My only question that I'm not sure about in my own mind. She didn't go to court, and then he got suspended for that. Yes. My only question is, in my own mind that I can't answer from you on my recollection, is did Trooper Graham, the source of information, find out that she was suspended? That's what I'm trying to figure out. Did Trooper Graham give her a ticket for driving suspended because in, you know, calling this in and everything that he, that she hadn't failed to appear for something else? Well, I have a note that on February 14th was actually when she was suspended. And, I'm sorry, yes, it had been suspended since February 14th, Valentine's Day. I think that's correct. So that's three weeks from when he stopped her, but still it would be two weeks from when Graham supposedly stopped her and knew that she was suspended, correct? Because... On February 14th, Graham stopped her. Oh, is that, I wasn't aware of that. He had stopped her two weeks earlier, but her license had been suspended another week earlier than that is what I understood, because it says that her license had been suspended since February 14th. And I thought that that's what Trooper Graham found out when he stopped her for the DUI. My recollection of the facts is that it was February 14th that Trooper Graham stopped her. Okay, you're probably right. I'll work that out. Is there any other questions? Thank you. It's a little short for me as well. May it please the Court. Counsel, I'm Edwin Anderson for Graham and Jackson. To clarify, I don't believe the record actually tells us exactly when Ms. Jackson's license was suspended for failure to appear. What we know is when Trooper Graham made a stop for suspicion of DUI and determined that her license at that point was suspended. I bet he found that out by making a radio call. And that was three weeks? Three weeks before Trooper Strand stopped her because he remembered that two weeks ago someone told me that a week before that her license was suspended. Now what counsel below made the point of getting across was that she's suspended for a failure to appear, and a failure to appear can be cleared at any time by showing up the license could have been reinstated. Trooper Strand did not know that. He didn't bother to check on it. He just made the stop. I think what Judge Kavanagh is doing in this case is saying, don't interrupt a motorist on the highway because you remember something somebody told you two weeks ago about something that happened a week before that. That's not good enough. When you've got a radio in your car and a computer in your car, that can tell you specifically. Not while he's driving. Well, so he pulls off the road. Or he picks up a radio. He's gone. Well, they were going in opposite directions, and we know that the trooper caught up with her and stopped her. I don't think it's beyond the trooper's ability to use his radio while he's driving, and he may have pulled off and interjected his name from his computer and then proceeded down Highway 46. He did say he knew her. It's a pretty empty highway in Johnson County. Didn't he say he knew her? Yeah, he was aware of who she was. These two troopers are both in the same troop in that region of the state, and this is Johnson County. It's a small county, and I think they've come across paths on more than one occasion. To start where I intended to start, in this state appeal, Ms. Jackson asked this court to affirm the judgment below. And the standard here is a mixed standard. It's manifest error on the judgments as facts and credibility and de novo on the ultimate decision. And I think that's important because Judge Cavan's decision about what the trooper was doing was based on the trooper's testimony about what is reasonable information to make a stop off of. And the trooper is the only police witness we've got, and he tells you what his experienced police knowledge is of what's reasonable information. If it's more than two weeks old, it's stale, and I won't rely on it to make this kind of a stop or to take this kind of an action against a citizen. It's too old. It's not reliable. Well, it's out of his own mouth that he said that, and the judge, I don't know what else he could have done from that statement that this isn't reliable information. It's in the record. It's what the only officer who's telling you how the police work. I guess the state could have produced it as a witness that says, oh, no, month old, two month old, it's all good. But they didn't. We've got this experienced trooper who tells us here's what a reasonable information is. It's more than two weeks old. I wouldn't rely on it. And there's a good reason he wouldn't rely on it. He's got the means to verify this information through technology. He just didn't use it. Is this the only time the troopers saw the defendant at that time? On that day, we stopped. We don't have any information. We just know that he sees her on the highway and makes the stop that day because he remembers from what Graham told him two weeks ago, whether he happened to be on the highway that day and they crossed paths. I don't know. We don't have the information. Probably even before, he would pull her out of the standoff. Sure. If he sees her a week later and said, oh, a week after he talked to Graham, I guess under his scheme. So you think the two to three weeks is what? Well, again, remember that we do have a context where the suspension was for a failure to appear and it could have been cleared at any time. So particularly in that circumstance, in that trooper's judgment, it becomes unreasonable to make that stop not knowing whether or not she's gotten the license reinstated. And he knows, I guess, that the 45-day suspension had gone into effect yet. Sure. That was the argument, right? Well, yeah. Well, that was part of it. We know she wasn't suspended. He couldn't have been driving one-to-one both. She was stopped three weeks ago for DUI. She must be suspended. That doesn't make sense. It's 45 days. She had to have been suspended for something else. I don't know if he knew it was failure to appear or what, but in his own mind, when asked in court what's a reasonable tip to work off of, the information he had was too old. It's too stale. He shouldn't have relied on it. And again, as I said, I'm not sure, based on what the judge had before him, he could have ruled any other way. So I question why we're second-guessing Trooper Stram's own knowledge about what reasonable police procedure is. It's the only information Judge Kavanaugh's had to work with. Trooper knew yesterday. Was that okay? Did Trooper talk to him yesterday? Yeah. Well, he said, I stopped her three weeks ago, and she was suspended. We'd still have that information about her status is three weeks old. I guess in another circumstance, if it's a drug arrest and someone says, hey, three weeks ago, Anderson had some dope in his house. You ought to go do something about it. Well, that's not as good as, hey, I was over there an hour ago. He's got dope in his house. I don't know what's going to get you a warrant in that circumstance, but I'm thinking the hour-old information is better than the three-week-old information. We argue about probable cause and reasonable suspicion in this situation, and the state talks about reasonable suspicion, and they rely on the Vasquez case and those cases. I would like to make the point that I cite Wren that says a valid traffic stop is based on probable cause, and Wren is still good law, and this court could cite that case if it chooses to. However, whether it's reasonable suspicion or probable cause, I don't think it changes this because we know what this trooper, saw was reasonable, and three-week-old information acting on that isn't reasonable. He didn't have enough information. And, again, to go back to where I started, he's got the technology to verify this information and make the stop based on the proper information, and he didn't. And I think fundamentally what the judge is doing here is saying, don't interrupt motorists on the highway on stale information when you have the means to inform yourself what their status is. We know that a trooper can simply be following you on the highway, run you over to the plate. If he knows you, I'm sure he can say, I just saw Joe Blow on the road. Is he currently licensed? And he'd get that information. He didn't do that in this case. If he knew about it yesterday, is that okay? If he had seen her, I guess theoretically, okay, he's en route to some other call, he sees her, and in his mind ticks a box, check on her situation, calls it in, finds out, yeah, she's suspended. The next day, when he's not as busy, he sees her on the highway. Well, this information is a day old. I guess he'd feel confident about making that stop. One day? Two days? Well, where do you draw the line? I agree, but in this instance, we know for this officer, who's the only one we've got testifying, 14 days out is too old. His information is three weeks old. He wouldn't rely on it, but he did. And the judge said, you told me it's not reliable. I can't find it. It was a good stop. And that's basically the suppression. But isn't the reasonableness of his opinion as to what is reasonable is just one of the considerations? I mean, if he had told the judge, I think six months is fine, would it be okay for the judge to say, well, you said it was six months, so I guess, you know, six months and one day is bad. I mean, isn't it the reasonable? If the defense counsel didn't try to counter that with better information, I'm not sure that the judge can just make up a number in his head and say, well, this is what I think. That's really not something we necessarily want circuit court judges to do, is to pick a number. No, but the officer doesn't make up the law, if it's what a reasonable police officer would do. And maybe it's an unreasonable police officer. And I guess you would warn yourself based on what higher courts have said is a reasonable decision. And I don't know that there's a specific situation on what is reasonable based on somebody's information about a traffic stop and being suspended for failure to appear, how long that information is out. As I said, what this judge had to work with was this trooper with a lot of experience saying that wasn't really the best information to work off of and I wouldn't rely on that. Your Honor, so I'd ask you to approve this suppression. Thank you. I think we need to understand what the two-week time frame was that Trooper Scram was talking about. Defense counsel asked him about the length of time that he could rely on the information, not the length of the information from the other trooper, from Trooper Graham. He was asked about the length of time that an officer could rely on information such as Trooper Graham had given him. And he said two weeks. And then the question is, when did he stop it? Within two weeks of the time that he got the information. He never said that the two-week time frame was not how long from the time the license is suspended can you rely on the information. He said how long can you rely on the information. And he said two weeks, and he gave you a ticket within two weeks. So he's not contradicting himself. He's not saying two weeks and that really it was three weeks. He fell right within the time frame that he himself described. The other thing I'd like to touch briefly upon is this technology requirement. Justice Bomer, as you noted, this would require an officer who's in a car by himself to, I guess, pull off to the side of the road, enter this information into his computer. Yes, she is suspended. Make a U-turn and catch up with her. There are so many side roads off of 146 that who knows where she would be by the time he confirmed that. Furthermore, this is the kind of, you confirm facts. That's why you stop with Kerry. You stop with Kerry under suspicion to confirm facts. And he confirmed very quickly. If her license had not been suspended, she would have been on the road in just moments. Under defendant's theory, if this requirement of using the technology to confirm, then you're saying you can never stop someone without making this confirmation. Then you move from reasonable suspicion to probable cause. That's not the requirement. You don't have to confirm with the technology in order to make the stop. For the foregoing reasons, the state would ask that this court reverse and amend the proceedings. Is there any other questions? Thank you. Thank you all. And your briefs are good. But that will be in the field tomorrow until 9 o'clock. All rise. Thank you.